# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

MAR 3 1 2014

**JAMES N. HATTEN, CLERK**
By: _aorj Row_
Deputy Clerk

ROBERT ARTHUR KENT J.R.

   Plaintiff,

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

**CAP**

                    vs.

Case No: **1:14-CV-0943**
(To be supplied by the Clerk of this Court)

DARLENE DREW, Warden,

HSA HOLLINGER,

Dr. Winston,

Dr. Martin.

Dr. Gonzalez.

UNITED STATES OF AMERICA
(Enter above the full name of ALL
defendants in this action.  Do not
use "et al.")

**CHECK ONE ONLY:**

_____   COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
          U.S. Code (state, county, or municipal defendants)

_____   COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
          28 SECTION 1331(a) U.S. Code (federal defendants)

__XXX__   OTHER (cite statute, if known)   **FEDERAL TORT CLAIMS ACT,
                                           28 U.S.C. § 1346(b), §§ 2671-2680**

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

Revised 4/01

**I.   Plaintiff(s):**

A.   Name: ROBERT ARTHUR KENT JR.

B.   List all aliases: N/A.

C.   Prisoner identification number: 28579-177

D.   Place of present confinement: NO LONGER INCARCERATED

E.   Address: 9 Rainbow Terrace, Danvers, Massachusetts 01923

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

**II.   Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank.   Space for two additional defendants is provided in **B** and **C**.)

A.   Defendant: Darlene Drew

Title: Warden

Place of Employment: Atlanta USP, 601 McDonough St., Atlanta,GA.

B.   Defendant: HSA Hollinger

Title: Health Services Administrator

Place of Employment: Atlanta USP, 601 McDOnough St., Atlanta,GA.

C.   Defendant: Dr. James Winston

Title: Former Clinical Director

Place of Employment: Atlanta USP, 601 McDonough St., Atlanta,GA.

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 4/01

2

## **ADDITIONAL DEFENDANTS**

Dr. Martin, Medical Doctor at the Atlanta USP, 601 McDonough St., Atlanta, Georgia 30315

Dr. Gonzalez,Psychiatric Doctor,Atlanta USP, 601 McDonough St., Atlanta, Georgia 30315

UNITED STATES OF AMERICA

### III.   Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.   Is there a grievance procedure available at your institution?

YES (X)   NO ( )   If there is no grievance procedure, skip to F.

B.   Have you filed a grievance concerning the facts in this complaint?

YES (X)   NO ( )

C.   If your answer is **YES**:

1.   What steps did you take?
I filed 2 BP-8's. The first was never answered. The second was answered beyond the time limits. I was given a BP-9 which was rejected for having too many com plaints and for being untimely.

2.   What was the result?
I am no longer incarcerated and there are no longer any administrative remedies available to me.

3.   If the grievance was not resolved to your satisfaction, did you appeal?

What was the result (if there was no procedure for appeal, so state.)

D.   If your answer is NO, explain why not:

E.    Is the grievance procedure now completed?   YES ( )   NO ( )

F.    If there is no grievance procedure in the institution, did you complain to authorities?   YES ( )   NO ( )

G.    If your answer is **YES**:

    1.    What steps did you take?

    _____

    _____

    _____

    2.    What was the result?

    _____

    _____

    _____

H.    If your answer is **NO**, explain why not:

_____

_____

_____

_____

**IV.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court**

A.   Name of case and docket number: _____ *N/A* _____

B.   Approximate date of filing lawsuit: _____ *N/A* _____

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _____ *N/A* _____

D.   List all defendants: _____ *N/A* _____

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____ *N/A* _____

F.   Name of judge to whom case was assigned: _____ *N/A* _____

G.   Basic claim made: _____ *N/A* _____

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____ *N/A* _____

H.   Approximate date of disposition: _____ *N/A* _____

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.  CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

## V.  STATEMENT OF CLAIM

On 17 December 2010, before the United States District Court
for the Northern District of Texas, San Angelo Division, Plaintiff's
Supervised Release was revoked by that court. Plaintiff was sen-
tenced to "a term of Twenty-four (24) months" imprisonment with the
"United States Bureau of Prisons," "with no additional term of sup-
ervised release imposed." See Exhibit        . The court, taking
into account Plaintiff's mental diagnosis and history, "recommend
[ed] that [Plaintiff] be incarcerated at MCFP Springfield, Spring-
field, Missouri." Exhibit        .

While a district court generally has no control over the place-
ment of a defendant once that defendant becomes a prisoner of the
United States Bureau of Prisons ("BOP"), the BOP is to consider the
request of the district court as to its needs and reasons set forth
in its judgment and commitment orders. This is particularly signifi-
cant in this situation because Plaintiff had previously been in the
custody of the BOP which is fully aware of Plaintiff's mental diffi-
culties and challenges.

During Plaintiff's privious incarceration with the BOP, Plain-
tiff had been transferred to the BOP from the State of Texas; where
Plaintiff had spent five ("5") years in a psychiatric ward. The
United States marshalls took Plaintiff to Beaumont FCI, Beaumont,
Texas, where, without being properly medicated, Plaintiff suffered
a psychotic episode. Plaintiff was held in the segragated housing
unit ("SHU") suffering from a psychotic breakdown. Plaintiff was
transferred to Oklahoma City FTC for further transfer to Plaintiff's
designated facility. Because of Plaintiff's psychological condition,
psychological medical file, history, and events which occurred while
at the Oklahoma FCI, Plaintiff was designated to Springfield MCFP
and sent to that facility.

While at the Springfield MCFP, psychology staff there deduced
what psychological treatment was necessary to stabilize Plaintiff.

Plaintiff was released from Springfield MCFP to a halfway house. Plaintiff was stable until a relapse occurred where Plaintiff was unable to secure his medications.

Plaintiff during the time he was off his medications committed several crimes, during one incident, of public intoxification, assault of a peace officer, terroristic threats, and harrasment. Plaintiff was sentenced to two years with the Texas Department of Corrections. After the finding of guilt in the Texas incident, Plaintiff was, as set forth supra, violated on his supervised release on the federal charge.

After the District Court revoked Plaintiff's supervised release, the United States Marshals ("USM") returned Plaintiff to the custody of the State of Texas. At the conclusion of the Texas prison term, Plaintiff was picked up by the GEO for the USM. The GEO took Plaintiff to the federal holdover in Conway, Texas. From there, Plaintiff was taken to Houston FDC. Because of the lack of treatment which Plaintiff had been suffering, Plaintiff had another psychotic break at the Houston FDC. Plaintiff was transferred to Forrest City FCI. Forrest City determined that Plaintiff's psychological needs necessitated a "care-level 3" designation. The BOP, instead of placing Plaintiff at Sprinfield FCI where the BOP had previously, successfully treated Plaintiff's mental condition, transferred Plaintiff to Atlanta USP.

Plaintiff arrived at the Atlanta USP 19 December 2012. Forrest City FCI had prescribed the incorrect medication. Atlanta USP, following the prescription regimen from Forrest City FCI dispensed the same pshychology medications which had not been working. Plaintiff had another psychological breakdown in which he swallowed several razor blades, punched his right hand into a concrete wall, injuring the right hand.

Atlanta USP x-rayed Plaintiff and confirmed that the razor blades had been ingested. Atlanta USP immediately had Plaintiff taken to

the Atlanta Medical Center ("AMC"). The AMC took additional x-rays
and a CT scan and confimed that there were at least 21 razor blade
pieces in Plaintiff's digestive track. AMC placed Plaintiff on a
liquid diet and attempted to have as many of the razor blade pieces
pass as possible. Despite the fact that all pieces had not passed,
and that AMC had advised the Atlanta USP ("Prison") that it would
be necessary to surgically remove those that had not passed, the
Prison did not authorize the removal of the remaining pieces of ra-
zor blades. On 21 February 2014, P.A. Wilson had another x-ray taken
which confirmed that numerous pieces of the razor blades remained
lodged in Plaintiff.

Despite numerous complaints of abdominal pain, the Defendants
refused to send Plaintiff back to the AMC to have the razor blades
removed.

Defendants refused to follow the treatment plan for Plaintiff's
psychological issues; which has caused several psychotic breaks dur-
ing the time Plaintiff has been at the prison. Prior to his retire-
ment, Defendant Gonzalez discontinued ALL of Plaintiff's psychology
medications. Dr. Winston, who is not a psychiatrist, restrarted the
medications. After Dr. Winston was forced to retire from service
with the BOP, Dr. Martin, also not a psychiatrist, refilled the
psychotropic medications. Dr. Lawson. There is no psychiatrist at
the prison who is an actual psychiatrist authorized to prescibe psy-
chotropic medications such as those necessary to treat Plaintiff
with. Since the retirement of Dr. Gonzalez there has been no psychi-
atrist on staff at the prison with whom Plaintiff has been able to
be treated. Despite having repeatedly requested of Dr. Gonzalez to
prescribe the same battery of psychotropic drugs which the special-
ist at Springfield had prescribed, he would not; stating that those
drugs are no longer available in the BOP system. I explained that
the medications he was prescribing were not working. Dr. Gonzalez
responded that the drugs he was prescribning were the only drugs he
could provide. Asked what Plaintiff was supposed to do: Dr. Gonzalez
responded succintly that Plaintiff did not have that long to be in

prison. It is a violation of Plaintiff's constitutional rights for
Defendants to manage Plaintiff's healthcare based on considerations
of time or finances rather than the medical needs known to the
physician. The same level of care must be afforded to Plaintiff re-
gardless of how long he has been sentenced to serve. Chislom v.
McManimon, 275 F.3d 315, 327 (3rd Cir. 2001)(This is true for short-
term facilities and for prisoners jailed for short periods). Plain-
tiff notified Dr. Winston of his cotniuing problems which resulted
from Plaintiff's having swallowed the razor blades. Alas, to no avail.
Dr. Winston at no time, in his capacity as the "clinical director" of
the Atlanta USP and "Chairman of the Utilization Committee," which
authorizes such out-patient care, ordered or recommended that Plain-
tiff be returned to the AMC to have the surgery to remove the razor
blade particales. Dr. Martin, the original attending physician,
never recommended to Dr. Winston that Plaintiff be taken back to the
AMC for the surgery. At the point when Dr. Winston became aware that
he would no longer be able to practice at the Prison, he ceased even
the discussion of Plaintiff's problems in that regard. When Plain-
tiff presented the matter to HSA Hollinger, she stated that there
was nothing which could be done because Dr. Winston was the "clinical
director" and his decision was final. When Plaintiff presented the
matter to Defendant Drew, she never answered Plaintiff's inquiries.

Likewise, was the situation with Plaintiff's psychological medi-
cations. Dr. Gonzalez refused to provide the medication which the
BOP's own medical specialist had determined could properly treat
Plaintiff; and were doing so at Springfield. Dr. Gonzalez statement
that the medication was not avaiable is a blatant and brazen act of
deliberate indifference. The medication is available through a non-
formulary request which was available for Dr. Gonzalez to fill out.
Dr. Gonzalez, knowing that Plaintiff was suffering from mental ill-
ness, would not, at the very least, fill out a non-formulary request
and explain the critical need that Plaintiff had for the medication.
Instead, Dr. Gonzalez allowed Plaintiff to suffer psychologically
the entire time that Plaintiff has been at the Prison.

The third condition for which the Defendants were deliberately indifferent to Plaintiff's serious medical needs is the hernia which Plaintiff at Forest City FCI. Upon arrival at the Prison, Plaintiff made Dr. martin and Dr. Winston aware that he had a hernia which he had sustained at Forest City on 23 August 2012. Defendants Martin nor Winston would provide would provide any treatment. Finally, on 18 February 2014, Lt. Rhynes looked at my medical record, confirmed that what I was saying about having a hernia was true and, after her examination, ordered Plaintiff a hernia belt. She was the first to examine Plaintiff. Defendants Martin and Winston had both refused to ven look at the hernia. Upon presentation of this situation to Defendants Hollinger and Drew, Plaintiff's complaints went unanswered and unresolved. Plaintiff notes that on 20 January 2014 RN Curry first ordered the hernia belt but it was not provided. It was only after Plaintiff was seen by Lt. Rynes that the hernia belt was actually recieved.

Plaintiff, now no longer a prisoner of the BOP, has filed this complaint at this time to seek redress of the deliberate indifference he has suffered at the hands of the Defendants. Plaintiff, not having the funds to retain counsel, has filed this complaint to the best of his ability. Plaintiff may need to amend his complaint after he makes it the rest of the way home where he will have at his disposal all of the records which the Prison required him to ship out of the institution.

## VI.   Relief:

State briefly exactly what you want the court to do for you.  Make no legal arguments.
Cite no cases or statutes.

Plaintiff seeks redress for what will be required to have the
surgery necessary to remove the razor blades, to stabilize him on
proper psychotopic medication, and to have the hernia repaired in
the amount of $3,000,000.00. Plaintiff further seeks punitive

damages for the pain and suffering and unecessary exacerbation of
Plaintiff's condition due to Defendants egregious deliberate in-
difference in the amount of $3,000,000.00. Plaintiff seeks total

redress and compensation in the amount of $6,000,000.00.

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this
Complaint are true to the best of my knowledge, information
and belief. I understand that if this certification is not correct,
I may be subject to sanctions by the Court.

Signed this _21_ day of _March_ , 20 _14_

_____

_____

(Signature of plaintiff or plaintiffs)

_Robert  Arthur  Kent  J.R._
(Print name)

_# 28579-177_
(I.D. Number)
_send it To:   Robert  Arthur Kent JR._
_9 Rainbow Terrace, Danvers,_
_Massachusetts , 01923_
(Address)

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 1 7 2010

CLERK, U.S. DISTRICT COURT
By _____ 1:20 pm
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

UNITED STATES OF AMERICA          )
                                  )
v.                                )          NO. 6:02-CR-010-C
                                  )          ECF
ROBERT ARTHUR KENT                )

## ORDER

Came on for hearing the Motion to Revoke Supervised Release in the above-styled and -numbered cause. Both parties appeared and announced ready.

The Motion to Revoke Supervised Release was read in open court. The Defendant admitted as true the allegations contained in said motion.

The Court is of the opinion that the motion should be **GRANTED**.

The Defendant is sentenced to the custody of the United States Bureau of Prisons for a term of Twenty-four (24) months, with no additional term of supervised release imposed. The Court recommends that Defendant be incarcerated at MCFP Springfield, Springfield, Missouri. The Defendant is remanded to the custody of the United States Marshal.

SO ORDERED.

Dated December 17, 2010.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE